UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ADONIS    ARRIAZA    ROSALES,    YONY
GUERRA,  WILMER  VARGAS,  VINCENTE
ESQUIVEL, GABRIEL MEJIA ROMERO, and
EDVIN MATA,

                                 Plaintiffs,

     -against-

LOW BID, INC. and GEORGE MCNULTY,

                                 Defendants.
----------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**
17-CV-3183 (ADS)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court, on referral from the Honorable Arthur D. Spatt for Report and Recommendation in this wage and hour action, is Plaintiffs' Adonis Arriaza Rosales ("Rosales"), Yony Guerra ("Guerra"), Wilmer Vargas ("Vargas"), Vicente Esquivel ("Esquivel"), Gabriel Mejia Romero ("Romero") and Edvin Mata ("Mata") (collectively "Plaintiffs") motion for default judgment. *See* Docket Entry ("DE") [14]. Plaintiffs commenced the instant action against Defendants Low Bid, Inc. ("Low Bid") and George McNulty ("McNulty") (together "Defendants"), alleging failure to: (i) compensate for overtime hours worked in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 *et seq.* and the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a4; and (ii) provide wage statements in accordance with NYLL § 195(3). *See* DE [1]. After Defendants failed to answer or otherwise respond, the Clerk of the Court entered default against them, *see* DE [13], and Plaintiffs then filed this motion for default judgment. *See* DE [14]. Judge Spatt subsequently referred

the motion to this Court for a Report and Recommendation as to whether a default judgment should be granted and, if so, to determine the appropriate amount of damages. *See* Electronic Order dated February 2, 2018.

For the reasons below, the Court respectfully recommends that Plaintiffs' motion for default judgment be granted in its entirety as modified below. Specifically, the Court recommends that the motion be granted as to Plaintiffs' FLSA and NYLL overtime claims, as well as to Plaintiffs Rosales's, Romero's and Mata's NYLL wage statement cause of action. However, the Court recommends that Plaintiffs be denied recovery for any work performed outside the State of New York from June 2013 until September 2013.

The Court also recommends that Plaintiffs be awarded $598,934.50 in damages, which is broken down as follows: (1) Plaintiffs Rosales, Romero, Mata, Guerra, Esquival and Vargas be awarded compensatory damages in the amounts of $67,400.00, $67,400.00, $79,225.00, $13,625.00, $22,750.00 and $4,225.00, respectively, for a total of $254,625.00; (2) Plaintiffs Rosales, Romero, Mata, Guerra, Esquival and Vargas be granted liquidated damages in the amounts of $67,400.00, $67,400.00, $79,225.00, $13,625.00, $22,750.00 and $4,225.00, respectively, for a total of $254,625.00; (3) Plaintiffs Rosales, Romero and Mata be awarded $5,000.00 each, for a total of $15,000.00, for Defendants' failure to provide wage statements under NYLL § 195(3); and (iv) Plaintiffs Rosales and Romero be each awarded $23,402.50 in prejudgment interest, with interest accruing at a daily rate of $12.65 until judgment is entered and Plaintiff Mata be granted $27,879.50 in prejudgment

2

interest with interest similarly accruing at a rate of $15.07 per day until judgment is entered.  Finally, the Court recommends that Plaintiffs be granted leave to move for attorneys' fees and costs.

## I.    Background

The following facts are taken from Plaintiffs' Complaint ("Compl."), DE [1], the Declaration of Keith E. Williams, Esq. ("Williams Decl."), DE [14-2], Declaration of Gabriel Meja Romero ("Romero Decl."), DE [14-9], Ex. D; Declaration of Adonis Arriaza Rosales ("Rosales Decl."), DE [14-5]; Declaration of Edvin Mata ("Mata Decl."), DE [14-10]; Declaration of Yony Guerra ("Guerra Decl."), DE [14-6]; Declaration of Vincente Esquivel ("Esquivel Decl."), DE [14-8]; Declaration of Wilmer Vargas ("Vargas Decl."), DE [14-7], and accompanying exhibits.  All facts are presumed true for the purposes of this motion.

Defendants' purported failure to pay overtime compensation and provide wage statements to Plaintiffs underlies the instant action.  *See generally* Compl.  Defendant Low Bid is a foreign corporation operating a construction company in New York and Defendant McNulty is an officer of Low Bid.  *See id.* ¶ 8.  Defendants employed Plaintiffs as iron workers.  *See id.* ¶ 5.  As an officer, McNulty hired and fired Plaintiffs, supervised their job duties, set their weekly schedules, decided the way they were paid, and determined the number of hours they worked each week.  *See id.* ¶¶ 9, 103-110.

Plaintiffs Romero, Rosales and Mata began their employment in August 2006, December 2007 and October 2010, respectively, and were each fired on March 15,

2016.  *See id.* ¶ 28; *see also* Romero Decl. ¶ 4; Rosales Decl. ¶ 4; Mata Decl. ¶ 4. Plaintiff Guerra started work on March 8, 2015 and Plaintiff Esquivel commenced his employment on August 2015.  Both were terminated on March 15, 2016. *See* Compl. ¶¶ 60, 73; *see also* Guerra Decl.¶ 4; Esquivel Decl. ¶ 4. Finally, Plaintiff Vargas worked for Defendants from August 2015 through October 2015.  *See* Compl. ¶ 86; *see also* Vargas Decl. ¶ 4.

From May 22, 2011 until June 2013, and from September 2013 through June 2015, Rosales, Romero and Mata were assigned to various construction sites in New York.  *See* Compl. ¶¶ 13, 29, 45.  In between those periods, from June 2013 until September 2013, and again from June 2015 until March 15, 2016, they were deployed to various New Jersey construction sites.  *See id.* ¶¶ 14, 30, 46; Ex. B ¶ 7; Ex. F ¶ 7; Ex. G ¶ 7.  In contrast, Guerra, Vargas and Esquivel worked exclusively at New Jersey construction sites for the entirety of their employment with Defendants. *See id.* ¶¶ 61, 74, 87.

Plaintiffs all worked the same shifts: Monday through Saturday from 7:00 a.m. to 5:30 p.m. with a thirty-minute meal break each shift.  *See id.* ¶¶ 15, 17, 31, 33, 47, 49, 62, 64, 75, 77, 88, 90.  Additionally, all Plaintiffs, except for Vargas, worked every other Sunday from 7:00 a.m. to 5:30 p.m. with a thirty-minute meal break each shift. *See id.*  As a result, all Plaintiffs alternated between working 60 and 70 hours per week, except for Vargas who worked 60 hours every week.  *See id.*

Defendants first paid Rosales and Romero an hourly rate of $20.00 between May 22, 2011 through July 2015 and later paid them $35.00 per hour.  *See id.* ¶¶ 19,

35; *see also* Rosales Decl. ¶ 12; Romero Decl. ¶ 12.   Similarly, Guerra and Vargas were paid $20.00 per hour for their first two weeks of employment, and then increased to an hourly rate of $35.00 until the end of their employment.   *See* Compl ¶¶ 65-66, 91-92; *see also* Guerra Decl. ¶ 10; Vargas Decl. ¶ 10.   Esquivel was paid $20.00 per hour for the first three weeks of his employment, and then increased to $35.00 per hour until he was fired.   *See* Compl. ¶¶ 78-79; *see also* Esquivel Decl. ¶ 10.   From May 22, 2011 until January 2012, Defendants paid Mata an hourly rate of $20.00 and then increased that amount to $25.00 per hour until July 2015 when his rate was increased again to $35.00 per hour until the end of his employment.   *See* Compl. ¶¶ 50-51; *see also* Mata Decl. ¶¶ 11-12.   Plaintiffs claim that they were not paid an overtime premium for all hours worked over 40 per week.   *See* Compl. ¶¶ 23, 25, 39, 41, 55, 57, 70, 72, 83, 85, 96, 98.   Finally, throughout Rosales's, Romero's and Mata's employment in New York, Defendants failed to provide them with accurate wage statements.   *See id.* ¶¶ 22, 27, 38, 43, 54, 59.

Based on the above, by Complaint filed on May 25, 2017, Plaintiffs commenced this litigation against Defendants seeking unpaid overtime compensation and statutory damages for Defendants' failure to provide wage statements.   *See* Compl. Defendants failed to respond or otherwise appear and a Certificate of Default was entered against them.   *See* DE [13].   On February 1, 2018, Plaintiffs moved for a default judgment, *see* DE [14], and one day later, Judge Spatt referred the motion to this Court for a Report and Recommendation as to whether it should be granted, and if so, what damages should be awarded.   *See* Electronic Order dated February 2, 2018.

## II.   Legal Standard

Motions for default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), which provides for a two-step process. *See* Fed. R. Civ. P. 55; *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011).   Initially, the moving party must obtain a certificate of default from the Clerk of the Court.   *See* Fed. R. Civ. P. 55(a).   Once the certificate of default is issued, the moving party may apply for entry of a default judgment.   *Id.*   When a default occurs, the well-pleaded factual allegations set forth in a complaint about liability are deemed admitted.   *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also* Fed. R. Civ. P. 8(b)(6)   ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right."   *Profi-Parikiet Sp. Zoo v. Seneca Hardwoods LLC*, No. 13-cv-4358, 2014 U.S. Dist. LEXIS 71289, at *11 (E.D.N.Y. May 23, 2014) (Report and Recommendation), *adopted by*, 2014 U.S. Dist. LEXIS 83128 (E.D.N.Y. June 18, 2014) (internal quotation omitted).   Rather, the district court must determine whether the plaintiffs' allegations establish liability.   *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); *see also Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (holding that a plaintiff seeking a default judgment must establish that its "uncontroverted allegations, without more, establish the defendants' liability on each asserted cause of action").

6

Courts consider three factors when determining whether to grant a default judgment: (i) whether the defendants' default was willful; (ii) whether the defendant has a meritorious defense; and (iii) the level of prejudice to the non-defaulting party if the motion is denied. *See Phillips 66 Co. v. TNT Petroleum, Inc.*, No. 15-cv-593, 2017 WL 765884, at *3 (E.D.N.Y. Feb. 2, 2017), *Report and Recommendation adopted*, No. 15-cv-5938, 2017 WL 758498 (E.D.N.Y. Feb. 27, 2017), *order corrected and superseded*, No. 15-cv-5938, 2017 WL 902533 (E.D.N.Y. Mar. 2, 2017), *and Report and Recommendation adopted*, No. 15-cv-5938, 2017 WL 902533 (E.D.N.Y. Mar. 2, 2017). The decision whether to enter a default judgment "is entrusted to the sound judicial discretion of the court." *Allstate Ins. Co. v. Howell*, No. 09-cv-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sept. 30, 2013); *see also Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) ("The dispositions of motions for entries of defaults and default judgments . . . are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties.").

If liability is established, the court must determine damages with "reasonable certainty." *Credit Lyonnais Sec., Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). An evidentiary hearing is not required so long as there is a basis, by detailed affidavits and other documentary evidence, for the damages awarded. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991).

## III.   Discussion

For the reasons below, the Court concludes that the Complaint sufficiently establishes Defendants' liability for:  (i) failure to pay overtime compensation under the FLSA and NYLL; and (ii) failure to provide wage statements under the NYLL. The Court also recommends that Plaintiffs be awarded damages in the amounts described below.  As a preliminary matter, the Court notes that, while the Complaint seeks relief for unpaid overtime compensation under the NJWHL, *see* Compl. ¶¶ 24, Plaintiffs' memorandum of law in support of this motion is silent about that claim. *See* DE [14-1].  The Court thus deems this request abandoned.  *See Rios v. Neighborhood Const. Corp.*, No. 07-cv-8701, 2009 WL 3335354, at *1 (S.D.N.Y. Oct. 14, 2009); *Wells Fargo Bank, N.A. v. Landi*, No. 13-CV-5822, 2015 WL 5655810, at *2 (E.D.N.Y. Aug. 14, 2015), *Report and Recommendation adopted*, No. 13-CV-5822, 2015 WL 5657358 (E.D.N.Y. Sept. 22, 2015) (finding claims for relief abandoned when not included in proposed judgment); *see also Trs. of Plumbers Local Union No. 1 Welfare Fund v. Generation II Plumbing & Heating, Inc.*, 2009 WL 3188303, at *3 n.1, *4 & n.3 (E.D.N.Y. Oct.1, 2009).

### A.   Liability

#### 1. *Fair Labor Standards Act*

Initially turning to the FLSA, Plaintiffs allege that they are owed overtime compensation for various periods during their collective employment. *See* Compl. ¶¶ 23, 25, 39, 41, 55, 57, 70, 72, 83, 85, 96, 98.  For the reasons below, the Court recommends that Defendants be found liable for violating the FLSA.

8

i. *Employer/Employee Relationship*

At the outset, Plaintiffs must establish that Defendants are employers under the FLSA and are engaged in interstate commerce. *See* 29 U.S.C. § 207; *D'Arpa v. Runway Towing Corp.*, No. 12-cv-1120, 2013 WL 3010810, at *13 (E.D.N.Y. June 18, 2013). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . . " 29 U.S.C. § 203(d). To determine whether an individual is an "employer" under the FLSA, the Second Circuit uses the economic realities test, which focuses on "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-105 (2d Cir. 2013) (citation omitted). The analysis also depends on whether the defendants had "operational control" over employees. *Id.* at 110.

An employer is subject to the FLSA if it is engaged in interstate commerce. An employer is liable for wage violations under the FLSA "if it hires an employee who either: 1) is engaged in commerce or in the production of goods for commerce or 2) is employed by an enterprise engaged in interstate commerce or in the production of goods for interstate commerce." *See Valdez v. H & S Rest. Operations, Inc.*, No. 14-cv-4701, 2016 WL 3079028, at *2 (E.D.N.Y. Mar. 29, 2016), *Report and Recommendation adopted by*, 2016 WL 3087053 (E.D.N.Y. May 27, 2016). An "enterprise engaged in interstate commerce" is an entity "whose annual gross volume

9

of sales made or business done is not less than $500,000" and has employees that engage in interstate commerce.  29 U.S.C. § 203(s)(1); *see also Valdez*, 2016 WL 3079028, at *2.

Here, the Court concludes that Defendants are employers under the FLSA. Looking first to Low Bid, Plaintiffs allege that the corporate entity controlled and ratified all employee compensation policies.  *See* Compl. ¶¶ 34-35.  Where, as here, "defendants had control over the terms and conditions of plaintiffs' employment," defendants are considered employers under the FLSA.  *See Valdez*, 2016 WL 3079028, at *3.  Regarding McNulty, the Complaint alleges that he controlled the business functions of Low Bid, determined employees' salaries, made hiring decisions, and was involved with the wage and hour policies of the corporate defendant.  *See* Compl. ¶ 15.  Applying the economic realities test, this is sufficient to allege that McNulty is also an employer under the FLSA.  *See Moon v. Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) ("The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.") (citation omitted).

Plaintiff also properly establishes that Defendants are an enterprise engaged in interstate commerce.  The Complaint alleges that the gross annual volume of sales made or business done was at least $500,000, and that "Defendants are enterprises engaged in commerce or in the production of goods for commerce."  Compl. ¶¶ 15, 56. Also, since Plaintiffs performed construction work in New York and New Jersey, they

10

were likely to have handled tools and construction materials that traveled in interstate commerce. *See Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-cv-1695, 2015 WL 1529653, at *3 (E.D.N.Y. Mar. 31, 2015); *see also Wing Kwong Ho v. Target Const. of NY, Corp.*, No. 08-cv-4750, 2011 WL 1131510, at *8 (E.D.N.Y. Mar. 28, 2011) (finding that construction workers' use of equipment that could have been transported across state lines met the enterprise coverage requirement). Accordingly, the Court recommends that all Defendants be considered employers under the FLSA, and are jointly and severally liable for any violation of the FLSA's overtime requirement.

ii.   <em>Overtime Claim</em>

The Court now turns to the substance of Plaintiffs' FLSA claims. As relevant to unpaid overtime compensation, the FLSA provides:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

Here, the Complaint establishes Defendants' overtime violations. Plaintiffs allege that they worked more than 40 hours per week and only paid "straight time pay,"—not time-and-a-half. *See* Compl. ¶¶ 23, 25, 39, 41, 55, 57, 70, 72, 83, 85, 96, 98. Thus, Plaintiffs plead a violation of the FLSA's overtime provision. *See Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 122 (E.D.N.Y. 2011) ("Because the

Complaint alleges that Plaintiffs worked more than 40 hours a week and were not paid time-and-a-half for their overtime hours, Plaintiffs have sufficiently pleaded a violation of 29 U.S.C. § 207."). Accordingly, based on the allegations in the Complaint, the Court recommends that Defendants be found liable for failure to pay overtime compensation in violation of the FLSA.

### 2. *New York Labor Law*

Turning to Plaintiffs' NYLL claims, Plaintiffs also assert that Defendants violated the NYLL's overtime and wage notice provisions. Applying the standards below, the Court recommends that Defendants be found liable for violating the overtime and wage notice provisions of the NYLL as well.

### i. *Overtime Wage*

"The New York Labor Law 'is the state analogue to the federal FLSA.'" *D'Arpa*, 2013 WL 3010810, at \*18 (quoting *Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011)). Thus, its "definition of employment is nearly identical to that of the [federal statute]." *See Juarez v. Precision Apparel, Inc.*, No. 12-CV-2349, 2013 WL 5210142, at \*7 (E.D.N.Y. Sept. 13, 2013). As a result, because of these similarities, a court approaches FLSA and NYLL claims in the same manner. *See, e.g.*, *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 360 (E.D.N.Y. 2015) ("[C]ourts in the Second Circuit have generally applied their analysis of a plaintiff's FLSA claim to a plaintiff's NYLL claim due to the substantial similarity in the provisions."). Accordingly, for the reasons set forth above, the Court finds that Defendants violated the overtime provisions of the NYLL except as to work performed in New Jersey from

June 2013 until September 2013 as discussed below.  *See D'Arpa*, 2013 WL 3010810, at *18.

ii.   *Failure to Provide Wage Statements*

Plaintiffs also seeks default judgment for Defendants' alleged failure to provide wage statements under Section 195(3) of the NYLL.   Under NYLL § 195(3), every employer shall  "furnish each employee with a statement with every payment of wages . . . ."  N.Y. Lab. Law § 195(3).  If an employer violates NYLL § 195(3), the employee can recover $250.00 for each work day that the violation occurred, not to exceed $5,000.  N.Y. Lab. Law § 198(1-d).  As Plaintiffs Rosales, Romero and Mata assert that they received no wage statements throughout the entirety of their employment, *see* Compl. ¶¶ 22, 27, 38, 43, 54, 59, they establish a violation of the pay stub provision of the NYLL.  Accordingly, the Court recommends that Defendants be found liable for violating NYLL § 195(3).

**B.   <u>Default Judgment Factors</u>**

Having concluded that there is a basis for liability over Plaintiffs' claims, the Court turns to the relevant factors outlined above, namely, willfulness, the existence of a meritorious defense, and prejudice, to determine whether, under the circumstances, entry of a default judgment is appropriate.

1. *Willfulness*

 "When a defendant is continually and 'entirely unresponsive,' [its] failure to respond is considered willful."  *See PJF Trucking*, 2014 U.S. Dist. LEXIS 134095 at *12 (citations omitted) (finding that the defendants' failure to respond to the

Complaint "sufficiently demonstrate[d] willfulness").  Plaintiffs submit an affidavit of service demonstrating that Defendants were served with the Summons and Complaint.  *See* Affidavit of Service, DE [14-11], Ex. H.  Defendants failed to answer or otherwise respond and did not seek an extension of time to do so.  Finally, Plaintiffs submit a Certificate of Service establishing that Defendants were served with this motion and supporting papers on February 1, 2018.  *See* Certificate of Service, DE [14-3].  As a result, "there is no indication that Defendants' failure to respond to the Complaint, despite being properly served, was anything but deliberate," and thus willful.  *PJF Trucking*, 2014 U.S. Dist. LEXIS 134095 at *12.

## 2. *Meritorious Defense*

Next, the Court is unable determine whether Defendants have a meritorious defense to any of Plaintiffs' claims because they did not answer or respond to the Complaint and did not oppose this motion.  *See Empire State Carpenters Welfare v. Darken Architectural Wood*, 11-cv-0046, 2012 U.S. Dist. LEXIS 5275, at *7 (E.D.N.Y., Jan. 17, 2012) (Report and Recommendation), *adopted by*, 2012 U.S. Dist. LEXIS 32924 (E.D.N.Y., Mar. 12, 2012).  Accordingly, this factor weighs in favor of granting Plaintiffs' motion.

## 3. *Prejudice*

The final factor to consider is prejudice to Plaintiffs if the motion is denied.  A denial of the motion would be prejudicial because there is no other method by which Plaintiffs can obtain relief from the Court.  *See Trs. of the Pavers & Rd. Builders Dist. Council Welfare v. JREM Constr. Corp.*, 12-cv-3877, 2013 U.S. Dist. LEXIS 23962, at

*26 (E.D.N.Y., Jan. 28, 2013) *Amended Report and Recommendation adopted by*, 2013 U.S. Dist. LEXIS 22321 (E.D.N.Y., Feb. 12, 2013); *see also PJF Trucking*, 2014 U.S. Dist. LEXIS 134095 at *21 ("Denying this motion would be prejudicial to Plaintiffs 'as there are no additional steps available to secure relief in this Court'" (internal quotation marks omitted)).  Accordingly, the Court concludes that entry of a default judgment is appropriate.

### C.   **Damages**

Having established Defendants' liability, "[t]he court must also determine the amount of damages, actual or statutory, that may be assessed." *Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 111 (E.D.N.Y. 2010).  Here, Plaintiffs seek compensatory damages, liquidated damages, prejudgment interest, and leave to move for attorneys' fees and costs.

As an initial matter, a "determination of damages requires consideration of the applicable limitations period under each statute." *Cortes v. Warb Corp.*, No. 14-cv-7562, 2016 WL 1266596, at *2 (E.D.N.Y. Mar. 15, 2016), *Report and Recommendation adopted by*, 2016 WL 1258484 (E.D.N.Y. Mar. 30, 2016).  The statute of limitations under the FLSA is two years but extends to three years for willful violations. 29 U.S.C. § 255(a).  A violation is willful if a plaintiff shows "that the employer either knowingly violated its obligations under the FLSA or showed reckless disregard for whether its conduct was prohibited by that statute." *Chen v. JP Standard Constr. Corp.*, No. 14-CV-1086, 2016 WL 2909966, at *5 (E.D.N.Y. Mar. 18, 2016), (Report and Recommendation), *adopted by*, 2016 WL 2758272 (E.D.N.Y. May 12, 2016).

15

A claim under the FLSA accrues on the "regular payday immediately following the work period for which services were rendered and not properly compensated." *Francois v. Mazer*, 09 CIV. 3275, 2012 WL 653886, at *4 (S.D.N.Y. Feb. 28, 2012). The limitations period under the NYLL is six years. *See* N.Y. Lab. Law § 198(3).

Plaintiffs sufficiently allege a willful violation such that the three-year limitations period under the FLSA applies, and as the Complaint was filed on May 25, 2017, Plaintiffs are entitled to relief for violations that occurred on or after May 25, 2014. *See* Compl. ¶¶ 102, 122, 123, 131, 135-136, 139-140, 147-148. Further, considering the six-year limitation period, Plaintiffs may recover for any violations of New York state law that occurred on or after May 25, 2011 under the NYLL.

However, under New York law, it is a settled rule of statutory interpretation, that unless expressly stated otherwise, no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state . . . enacting it." *Magnuson v. Newman*, No. 10-cv-6211, 2013 WL 5380387, at * 5 (S.D.N.Y. Sept. 25, 2013) (internal quotations and citation omitted). As the NYLL is silent about its extraterritorial application, courts in this Circuit have held that it does not apply to work performed outside of New York State. *See Warman v. Am. Nat'l Standards Inst.*, No. 15-CV-5486, 2016 WL 3676681, at *2 (S.D.N.Y. July 6, 2016); *see also O'Neill v. Mermaid Touring Inc.*, 968 F. Supp. 2d 572, 578 (S.D.N.Y. 2013) ("Nothing in the [NYLL] suggests that the legislators intended to give persons who were outside New York the right to come to New York to sue their employers." (internal citation omitted)).

16

Therefore, Plaintiffs are unable to recover for any unpaid overtime compensation that occurred outside New York under the NYLL.

Moreover, while "plaintiffs may not recover under both the FLSA and NYLL for the same injury, courts allow plaintiffs to recover under the statute that provides for the greatest relief." *Ni v. Bat-Yam Food Servs. Inc.*, No. 13-cv-7274, 2016 WL 369681, at *1 (S.D.N.Y. Jan. 27, 2016); *see also Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195, 2012 WL 1669341, at *5 (S.D.N.Y. Mar. 26, 2015).   As a result, considering the NYLL's six-year limitations period, the Court applies that statute for work performed by Romero, Rosales and Mata from May 25, 2011 through June 2015 for their damages calculations.   However, as set forth above, those Plaintiffs cannot recover for work performed in New Jersey during the period of June 2013 until September 2013 and June 2015 through March 15, 2016 under the NYLL.   Instead, considering the statute's interstate reach, the Court will apply the FLSA for work performed in New Jersey by Romero, Rosales and Mata.   As a result, the Court applies the FLSA for the period from June 2015 through March 15, 2016 but declines to do so for similar work performed from June 2013 until September 2013 as it is untimely under the federal statute.   *See Luna v. Gon Way Constr., Inc.*, No. 16-cv-1411, 2017 WL 835321, at *15 (E.D.N.Y. Feb. 14, 2017), *Report and Recommendation adopted*, No. 16-cv-1411, 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017) (recommending that "the District Court find that Plaintiffs are permitted to recover liquidated damages for unpaid wages and unpaid overtime under the greater of the FLSA or NYLL").   As Plaintiffs Guerra, Vargas and Esquivel worked exclusively in New

Jersey, the Court will apply the FLSA's three-year time frame for those individuals. Accordingly, Romero, Rosales and Mata's claims are subject to the NYLL for work performed in New York from May 25, 2011 through June 2015 and the FLSA from July 2015 through March 15, 2016.  Further, Guerra, Vargas and Esquivel are subject to the FLSA's limitations period and their damages will be calculated from May 25, 2014 through March 15, 2016.

### 1. *Compensatory Damages*

Initially, the Court notes that in support of their claims for damages, Plaintiffs submit various sworn declarations reciting the hours worked for the relevant periods of employment.  *See* Romero Decl. ¶¶ 7-10; Rosales Decl. ¶¶ 7-10; Mata Decl. ¶¶ 7-10; Guerra Decl. ¶¶ 7-10; Esquivel Decl. ¶¶ 7-10; Vargas Decl. ¶¶ 7-10.  Where, as here, a defendant fails to rebut a plaintiffs' assertions of hours worked and the rate of pay, the Court credits the plaintiffs' recollection.  *See Perez v. Queens Boro Yang Cleaner, Inc.*, No. 14-cv-7310, 2016 WL 1359218, at *2 (E.D.N.Y. Mar. 17, 2016), *Report and Recommendation adopted sub nom.*, *Perez v. Yang Cleaners*, 2016 WL 1337310 (E.D.N.Y. Apr. 5, 2016) ("When a defendant defaults in an action brought under the FLSA, the plaintiffs' recollection and estimates of hours worked are presumed to be correct."); *Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08CIV.6071, 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009), *Report and Recommendation adopted by*, 08CIV.6071, 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009) ("In a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours

worked are presumed to be correct."). Accordingly, the Court relies on Plaintiffs' recollections in calculating the amount of outstanding overtime compensation.

### i. Overtime Claims

Initially, Plaintiffs seek unpaid overtime compensation. The FLSA and NYLL require overtime compensation "at a rate not less than one and one-half times the regular rate at which he is employed." *See* 29 U.S.C. § 207(a)(1); *see Peralta v. M & O Iron Works, Inc.*, No. 12-CV-3179, 2014 WL 988835, at *7 (E.D.N.Y. Mar. 12, 2014) ("The NYLL overtime compensation scheme is identical to the FLSA requirements in that it obligates employers to pay employees a fifty[]percent premium for each of their overtime hours."). Overtime wages due are calculated by "multiplying the number of overtime hours worked in a week by the overtime rate, which is one half of the usual hourly rate." *Pinzon v. Paul Lent Mech. Sys., Inc.*, No. CV 11-3384, 2012 WL 4174725, at *3 (E.D.N.Y. Aug. 21, 2012), *Report and Recommendation adopted by*, 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012).

Turning first to Rosales and Romero, they initially had an hourly rate of $20.00 and they each worked 5,130 hours of overtime at this rate. Then, starting in July 2015, their salaries increased to $35.00 per hour and they worked 920 hours at this rate. Multiplying half of the respective hourly rates by the total number of unpaid overtime hours yields overtime compensation amounting $67,400.00 for each of these Plaintiffs. Moving to Mata, his initial salary was $20.00 per hour and he alternated between working for twenty and thirty hours of overtime for thirty-two weeks. His hourly salary increased to $25.00 in January 2012 and he similarly continued to

switch weekly between twenty and thirty hours of overtime for 173 weeks.  Finally, his salary was raised again to $35.00 per hour in July 2015 and he continued his weekly routine of alternately working twenty and thirty hours of overtime for 37 weeks.  Multiplying half of the above mentioned respective hourly rates by the total number of overtime hours produces overtime compensation amounting to $79,225.00. Similarly, Guerra initially worked 50 hours of overtime at the straight time rate of $20.00 per hour and thereafter worked 100 hours of overtime at an hourly rate of $35.00, which amounts to $13,625.00 in unpaid overtime compensation.  Esquivel worked three hours of overtime at an hourly rate of $20.00 and 1,260 hours of overtime at an hourly rate of $35.00, which totals $22,750.00 of unpaid overtime compensation.  Finally, Vargas worked 20 hours of overtime at an hourly rate of $20.00 and from that point worked 230 hours of overtime at a rate of $35.00, which yields $4,225.00 in unpaid overtime.  Accordingly, the Court recommends that Plaintiff be awarded a total of $254,625 in unpaid overtime compensation.

### ii. Wage Statement Claim

As set forth above, Section 195(3) requires that every employer provide to his or her employees "a statement with every payment of wages."  N.Y. Lab. L. § 195(3). Section 198 also requires individualized calculations of damages for violations of Section 195(3).  From April 9, 2011 through February 26, 2015, an employee could recover $100 for each work week that the employer violated Section 195(3) by failing to provide wage notices, up to a statutory maximum of $2,500.00.  *See* N.Y. Lab. L. § 198(1-d) (effective April 9, 2011). From February 27, 2015 onward, an employee may

recover $250 for each work day that the employer was in violation of Section 195(3), up to a statutory maximum of $5,000.00. *See* N.Y. Lab. L. § 198(1-d) (effective February 27, 2015). Here, Romero, Rosales and Mata establish that they worked more than 20 work days after February 27, 2015, and each is therefore entitled to the maximum award of $5,000.00 under Section 195(3) for a total award of $15,000.00. The remaining Plaintiffs are not entitled to a recovery NYLL § 195(3) because they exclusively performed work outside of New York State. *See Magnuson v. Newman*, No. 10-cv-6211, 2013 WL 5380387, at *5 (S.D.N.Y. Sept. 25, 2013); *see also Kassman v. KPMG LLP*, 925 F.Supp.2d. 453, 469 (S.D.N.Y. 2013) (holding that provisions of the NYLL do not apply extraterritorially and citing cases).

## 2. *Liquidated Damages*

The Court also recommends that Plaintiff be awarded liquidated damages. Under the FLSA and NYLL, liquidated damages are awardable in an amount equal to the unpaid compensation "unless the employer can show that it acted in good faith."[1] *Valdez*, 2016 WL 3079028, at *6 (quoting 29 U.S.C. § 216(b)); *see* N.Y. Lab. Law §§ 663(1), (2). While an award of duplicative liquidated damages under the FLSA and NYLL is prohibited, *see Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018), courts within this Circuit have allowed recovery under the statute that provides the

---

[1] Effective November 24, 2009, liquidated damages are awardable under the NYLL "unless the employer proves a good faith basis to believe that its underpayment was in compliance with the law . . . ." N.Y. Lab. Law § 663(2). Further, under the NYLL the calculation of these additional damages will vary depending upon the timeframe of the violations. For claims that "occurred on or before April 8, 2011, NYLL liquidated damages [are] equal to twenty-five percent of the total amount of wages … found due." *Cardoza*, 2015 WL 5561033, at *13 (quotation omitted). "For all NYLL claims that occurred on or after April 9, 2011, the employer is liable for liquidated damages equal to one hundred percent of the total amount of wages found to be due" just as would be awarded under the FLSA. *See id.* (citing N.Y. Lab. Law. § 663(1)).

greatest relief.  *See Castillo v. RV Transp., Inc.*, No. 15-cv-0527, 2016 WL 1417848, at *3 (S.D.N.Y. Apr. 11, 2016); *see also Luna*, 2017 WL 835321, at *15.  Thus, like the calculation of compensatory damages, the Court calculates Romero's, Rosales's and Mata's liquidated damages initially under the NYLL for work performed in New York from May 25, 2011 through June 2015 and then pursuant to FLSA for work performed from July 2015 through March 15, 2016.  In contrast, Guerra, Vargas and Esquivel's liquidated damages are calculated solely under the FLSA.

Here, the Court finds that Defendants' default alone is sufficient to establish a lack of good faith.  *See Valdez*, 2016 WL 3079028, at *6 ("As the defendants here have defaulted, they have not shown they acted in good faith.").  Plaintiffs also allege facts suggesting that Defendants knowingly violated the federal and state overtime requirements.  *See* Compl. ¶ 33.  Accordingly, Plaintiffs are entitled to liquidated damages in the form of 100% of unpaid overtime wages.  As a result, the Court recommends that Rosales, Romero, Mata, Guerra, Esquival and Vargas be awarded liquidated damages in the amounts of $67,400.00, $67,400.00, $79,225.00, $13,625.00, $22,750.00 and $4,225.00, respectively, for a total liquidated damages award of $254,625.00 and a total damages award of $509,250.00.

### 3.  *Prejudgment Interest*

Plaintiffs also seek prejudgment interest under the NYLL.  Although it is "well settled" that prejudgment interest is not awardable under the FLSA, *Begum v. Ariba Disc., Inc.*, 12-CV-6620, 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015), "the NYLL permits the award of both liquidated damages and pre-judgment interest."  *Fermin*

*v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 38 (E.D.N.Y. 2015).  Under the New York Civil Practice Law and Rules ("CPLR"), "[i]nterest shall be at the rate of nine per centum per annum."  N.Y. C.P.L.R. § 5004.  Where, as here, unpaid wages are "incurred at various times, interest shall be computed . . . from a single reasonable intermediate date."  N.Y.C.P.L.R. § 5001(b); *Coulibaly v. Millennium Super Car Wash, Inc.*, No. 12-CV-04760, 2013 WL 6021668, at *15 (E.D.N.Y. Nov. 13, 2013).  A common date is "[t]he median date between the earliest ascertainable date the cause of action existed and the date the action was filed . . . ."  *Gunawan*, 897 F. Supp. 2d at 93; *see also Tackie v. Keff Enterprises, LLC*, No. 14-cv-2074, 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014) ("In wage and hour cases, courts often choose the midpoint of the plaintiffs' employment within the limitations period.").  Further, an NYLL plaintiff may recover prejudgment interest only on his "actual damages . . . under the NYLL, . . . not [his] liquidated damages."  *Marcelino v. 374 Food, Inc.*, No. 16-cv-6287, 4, at *21 (S.D.N.Y. Mar. 27, 2018)

Here, the relevant period of employment for Rosales, Romero and Mata under the NYLL is May 25, 2011 through June 27, 2015.  The mid-point between those two dates is June 10, 2013.  Both Rosales and Romero sustained actual damages of $51,300.00 under the NYLL.  The Court calculates the accrued pre-judgment interest on this amount at a rate of 9% per year as $23,402.50.[2]  And, as the unpaid wages remain outstanding, daily interest shall continue to accrue at the rate of $12.65 per

---

[2] This figure was reached by taking the number of days between the mid-point selected, June 10, 2013, and the date of this Order, July 3, 2018 (1,850 days) and multiplying it by the daily interest rate of $12.65 ($51,300.00(unpaid wage) x 0.09 (yearly interest) = $4,617.00 (yearly interest) / 365 days = $12.65 per day interest).

day for each day until judgment is entered.  Similarly, the Court calculates that Mata's accrued pre-judgment interest to be $27,879.50.[3]  And, as the unpaid wages remain outstanding, daily interest shall continue to accrue at the rate of $15.07 per day for each day until judgment is entered.  Accordingly, the Court recommends that a pre-judgment interest amounting to $23,402.50 be awarded to both Rosales and Romero with interest accruing at a daily rate of $12.65 until judgment is entered, and $27,879.50 be granted to Mata with interest similarly accruing at a rate of $15.07 per day.

### 4. *Attorneys' Fees and Costs*

Finally, Plaintiffs request leave to move for attorneys' fees and costs if damages are awarded.  *See* Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment, DE [14-1], at 19.  As the Court has determined that Plaintiffs are entitled to damages, it is respectfully recommended that they be granted leave to submit a motion for attorneys' fees and costs under the FLSA and NYLL.  *See* 29 U.S.C. § 216(b) ("The court in such [FLSA] action shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); N.Y. Lab. Law § 198(1-a) ("In any [NYLL] action instituted in the courts upon a wage claim by an employee ... in which the employee prevails, the court shall allow such employee to recover ... all reasonable attorney's fees...."); *Zhen Ming Chen v. New Fresco Tortillas Taco LLC*, 15-cv-2158,

---

[3] This figure was reached by taking the number of days between the mid-point selected, June 10, 2013, and the date of this Order, July 3, 2018 (1,850 days) and multiplying it by the daily interest rate of $15.07 ($61,125.00 (unpaid wage) x 0.09 (yearly interest) = $5,501.25 (yearly interest) / 365 days = $15.07 per day interest).

2015 WL 5710320, at *10 (S.D.N.Y. Sept. 25, 2015) ("Under the FLSA and NYLL, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs.").

## IV.   Conclusion

For the reasons set forth above, the Court respectfully recommends that Plaintiffs' motion for default judgment be granted in its entirety as modified below. Specifically, the Court recommends that the motion be granted as to Plaintiffs' FLSA and NYLL overtime claims as well as to Plaintiffs Rosales's, Romero's and Mata's NYLL wage statement cause of action. However, the Court recommends that Plaintiffs be denied recovery for any work performed outside the State of New York from June 2013 until September 2013. The Court also recommends that Plaintiffs be awarded a total of $598,934.50, which is broken down as follows: (1) Plaintiffs Rosales, Romero, Mata, Guerra, Esquival and Vargas be awarded compensatory damages in the amounts of $67,400.00, $67,400.00, $79,225.00, $13,625.00, $22,750.00 and $4,225.00, respectively, for total amount of $254,625.00; (2) Plaintiffs Rosales, Romero, Mata, Guerra, Esquival and Vargas be awarded liquidated damages in the amounts of $67,400.00, $67,400.00, $79,225.00, $13,625.00, $22,750.00 and $4,225.00, respectively, for a total liquidated damages award of $254,625.00; (3) Plaintiffs Rosales, Romero and Mata be awarded $5,000.00 each, for a total of $15,000.00 for Defendants' failure to provide wage statements under NYLL § 195(3); and (iv) Plaintiffs Rosales and Romero be both awarded $23,402.50 in prejudgment interest, with interest accruing at a daily rate of $12.65 until judgment is entered and Plaintiff Mata be granted $27,879.50 with interest similarly accruing at a rate of

$15.07 per day until judgment is entered.   Finally, the Court recommends that Plaintiffs be granted leave to move for attorneys' fees and costs.

## V.    Objections

A copy of this Report and Recommendation is being served on Plaintiffs by electronic filing on the date below.   Plaintiffs are directed to serve a copy on Defendants and promptly file proof of service by ECF.   Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this report.   Failure to file objections within the specified time waives the right to appeal to the District Court.   *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v.  Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996)

Dated:        Central Islip, New York
              July 3, 2018

                                    s/ Steven I. Locke
                                    STEVEN I. LOCKE
                                    United States Magistrate Judge